# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

James Kennedy,

Plaintiff,

OCT 16 2023 PM 12:15
FILED-USDC-CT-HARTFORD

v.                                                Case No.:

Jose Tulisano, Fatima De Almeida-Kennedy

Defendants.

## PLAINTIFFS' COMPLAINT

### I. JURISDICTION AND VENUE

1. The Court has jurisdiction pursuant to 28 U.S.C. §1331 for all claims raised

   herein arising under the Constitution, laws, or treaties of the United States,

   specifically 28 U.S.C. §1983.

2. The Court has jurisdiction over all state law claims pursuant to 28 U.S.C. §1367.

   Specifically, the remaining claims arise from a common nucleus of operative fact.

3. Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b)(2) as a

   substantial part of the events giving rise to the claims occurred within this district.

### II. PARTIES

4. James Kennedy ("Plaintiff") is a citizen of Connecticut who presently resides at

   96 Timberwood Road, West Hartford, CT.

5. Defendant Jose Tulisano ("TULISANO") is an individual employed by the

   Connecticut Judicial Department and acted under color of law in the course and

   scope of employment at all times relevant hereto in the Town of New Britain,

1

County of Hartford, State of Connecticut.  He is sued herein in his individual

capacity only.

6.  Defendant Fatima Karina DE ALMEIDA ("DE ALMEIDA"), is a citizen of

Tennessee who has acted under color of law in cooperation and agreement with

TULISANO.

### III. STATEMENT OF FACTS

7.  Plaintiff married Fatima Karina De Almeida-Kennedy on June 29, 2001.

8.  In November of 2003, a child was born of the marriage.

9.  In August of 2005, a second child was born of the marriage.

10. Plaintiff observed DE ALMEIDA abuse both children.

11. Plaintiff and DE ALMEIDA filed for personal bankruptcy in July of 2009.

12. Plaintiff and DE ALMEIDA separated in August of 2009.

13. Plaintiff and DE ALMEIDA were divorced by Separation Agreement in

Connecticut on August 2, 2010, which included an obligation by Plaintiff to pay

$1,000 per week to DE ALMEIDA as unallocated child support and alimony.

14. Under guidelines in place on that date, the child support portion of unallocated

was $193 per week.

15. On December 9, 2014, the unallocated payment was reduced by agreement to

$900 per week of current and $200 per week of arrearage.

16. In December of 2015, Plaintiff filed for a modification of custody which included a

request for the termination of the unallocated payment.

2

17. After becoming aware of Plaintiff's intentions, DE ALMEIDA opened a case with Connecticut Child Support Enforcement services, claiming a then existing unallocated arrearage as 100% child support.

18. In October of 2017, Plaintiff's motion for custody was denied, and unallocated left undetermined.

19. In December of 2018, Plaintiff was awarded temporary full custody of both children, which award was ultimately dismissed on the basis of lack of subject matter jurisdiction.

20. In December of 2019, Magistrate Court found Plaintiff both could not and could pay the order simultaneously, and ordered a $500 payment along with a resumption of weekly $1,100 payments.

21. In November of 2021, eldest child reached the age of majority and moved in with Plaintiff in Connecticut, thus terminating the child support obligation for Plaintiff because of change of custodial parent.

22. In May of 2022, a hearing was held on the retroactive termination of alimony to 2018, with a decision later published in November of 2022 which denied the Motion without a determination of the portion of child support attributable to the unallocated order.

23. In June of 2022, eldest child obtained a GED, thus terminating any child support obligation for either parent by operation of law in Connecticut.

24. In August of 2022, DE ALMEIDA hired counsel to pursue a settlement with Plaintiff on all financial issues.

3

25. In late November of 2022, plaintiff appealed the order of the court in its entirety, including the denial of alimony termination, the lack of finding on the termination of child support, and the lack of finding of what arrearage existed, if any, for child support and/or alimony.

26. Plaintiff's appeal was delayed in proceeding from February through June 20, 2023, to afford both sides to negotiate a potential settlement of all outstanding financial issues.

27. On June 19, 2023, plaintiff issued a counter-offer to DE ALMEIDA'S offer, which was never accepted.

28. On June 20, 2023, DE ALMEIDA contacted Bridgeport Support Enforcement and they then sent a letter to Plaintiff indicating a requirement of a $1,000 payment to avoid a contempt citation, which Plaintiff paid prior to the deadline of July 7.

29. Unbeknownst to Plaintiff, and at DE ALMEIDA'S urging, Bridgeport Support Enforcement requested a contempt citation by a Magistrate, which was signed on July 18, 2023.

30. Around July 25, 2023, Plaintiff hired an attorney, in preparation for youngest's child's 18th birthday, to file a Motion for Modification to terminate child support, determine any arrearage for alimony, to terminate alimony, and to determine the impact of eldest child's residence with plaintiff on his obligation to DE ALMEIDA.

31. From December of 2015 through the date of this filing, Plaintiff had always dealt with the Bridgeport Support Enforcement office.

32. One week later, on August 3, 2023, Plaintiff received a voicemail from a male named Jose Tulisano, who did not identify his position nor role, indicating that

4

Plaintiff "had not responded to letters" and "would have Plaintiff's license to drive
in Connecticut suspended with a phone call to the DMV" if Plaintiff did not
physically come to the New Britain courthouse for a "simple matter" on August
9th, and then TULISANO would let "West Hartford know that [TULISANO was]
coming out".

33. Plaintiff had no idea who TULISANO was, nor why he had called, and utilized
Google to determine his identity as a Child Support investigator with the New
Britain Judicial Branch office. Caller ID did not show any indication of his role.

34. Plaintiff phoned TULISANO's office on the same day, August 3, and spoke with a
Case Officer, who had no knowledge of why TULISANO would have contacted
him. The Case Officer identified himself as the person who would handle the
case if it had been transferred to New Britain. He had no record they could find
of why TULISANO would have contacted Plaintiff. He indicated he would leave
TULISANO a message.

35. TULISANO returned Plaintiff's call and had a very pleasant demeanor, indicating
that "someone" had handed him the file, had seen handwritten comments on the
file that child support was for life, did not mention taking the license, implying that
it was DE ALMEIDA, and that TULISANO himself had gone to the law library to
look up lifetime child support and could not find a case for it. He also intimated
that his father had been a famous attorney and had the Hartford courthouse
named after him. TULISANO further stated "I guess I got contacted because you
live in my district". TULISANO is neither the case officer for, nor in the same
district as, Plaintiff, which made his comment highly odd. Plaintiff informed

5

TULISANO that the child support order was coming to an end, that there was no child support arrearage under the relevant statutes, and to inquire as to why this was coming up right after Plaintiff had paid $1,000 above his weekly payment.

36. Plaintiff later that day sent TULISANO an email, cc:'ed to DE ALMEIDA, notifying both that a federal lawsuit if Plaintiff's rights were violated by suspending his driver's license without due process, confirming the topics of discussion in the earlier conversation. Further, plaintiff provided in writing special damages that would be incurred.

37. Plaintiff did not go to TULISANO's office on August 9, still not being aware of any contempt citation nor TULISANO's role or relevance to anything.

38. On August 21, 2023, the day before youngest child's birthday, TULISANO left a voicemail repeating the same threat to have Plaintiff's license suspended via a phone call to the DMV if plaintiff did not present himself to TULISANO on August 24, 2023, repeating the same other threats.

39. Plaintiff did not understand TULISANO's continuing involvement when his office was neither the location of the case officer nor in Plaintiff's district.

40. Plaintiff phoned TULISANO the same day and this time, TULISANO's demeanor was substantially different. First, TULISANO accused Plaintiff of being "past due on more than $200k of child support" and told Plaintiff he "should be ashamed". Then, TULISANO informed Plaintiff that TULISANO would "embarrass" plaintiff by finding him "wherever he appeared." At this time, TULISANO stated that a contempt citation had been issued and had been mailed to Plaintiff. Plaintiff had not received any mailings and did not believe TULISANO.

6

41. Plaintiff reiterated on the call and then sent in an email to TULISANO that if TULISANO were to violate his civil rights, a lawsuit would be filed and provided a non-exhaustive list of special damages that would be sought and that Plaintiff suspected DE ALMEIDA's involvement.  Further, Plaintiff reiterated he had received no notification of a contempt citation and that the court website did not reflect one.

42. On August 22, 2023, plaintiff's youngest child turned 18 and had graduated high school in May of 2023.  Both Tennessee and Connecticut Child Support Enforcement Services sent letters to Plaintiff indicating no further collection of child support for either child would be made as long as Plaintiff provided proof of graduation, which Plaintiff provided to both state agencies and which both verified receiving.

43. On September 16, 2023, DE ALMEIDA was served with a copy of the Motion to Modify filed by Plaintiff.

44. On September 19, 2023, without Plaintiff's knowledge, without leaving any citation at Plaintiff's abode or serving plaintiff in-hand, and without notification to Plaintiff, TULISANO signed a perjured proof of service of the contempt citation and returned it to Magistrate Court.

45. The same day, the docket for the underlying case reflected a Contempt Citation for the first time.

46. TULISANO did not file the perjured Return of Service until September 29, 2023.

47. Plaintiff's attorney received a copy of the perjured Return of Service on Wednesday, October 4, 2023, and immediately emailed a copy to Plaintiff.

7

48. Plaintiff's attorney filed a Motion to Dismiss the action in Magistrate Court on October 4, 2023.

49. As of October 16, 2023, Plaintiff has never received any communication in writing from TULISANO nor met TULISANO.

## IV. FIRST CAUSE OF ACTION (42 U.S.C. §1983 – Fourteenth Amendment – Procedural Due Process) – TULISANO Only

50. Plaintiff repeats and realleges each and every statement of fact contained in the Statement of Facts paragraphs previously set forth.

51. Plaintiff has a right to proper service for a Magistrate Court contempt citation, as the failure to appear may result in the issuance of a *capius mittimus*.

52. TULISANO falsified an affidavit of service by signing a return of service where he knew he had not properly served Plaintiff.

53. As a result of TULISANO's perjury, the Magistrate Court scheduled a hearing requiring Plaintiff's presence for October 19, 2023, one month following the date of the perjured affidavit.

54. As a direct and proximate result of the violation of his constitutional rights by TULISANO, Plaintiff suffered general and special damages as alleged in this Complaint. In addition to the elevation of Plaintiff's blood pressure, Plaintiff has been fearful of having his license revoked or other action taken by TULISANO in violation of his rights. Plaintiff has incurred increased expense in litigating a Motion to Dismiss and addressing the potential of a capias.

55. The conduct of TULISANO was willful, malicious, oppressive and/or reckless, and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

8

## V. SECOND CAUSE OF ACTION (42 U.S.C. §1983 – Fourteenth Amendment – Substantive Due Process – Conspiracy) All Defendants

56. Plaintiff repeats and realleges each and every statement of fact contained in the paragraphs previously set forth.

57. DE ALMEIDA has known since 2016 that Plaintiff has been deprived of the ability to travel internationally due to the State of Connecticut reporting a past due balance on child support.

58. DE ALMEIDA was advised by her own legal counsel that child support would cease to be collected after August of 2023 and that the arrearage was zero.

59. DE ALMEIDA was advised by her own legal counsel that the Motion to Modify to be decided in 2024 by Superior Court would end support enforcement and erase the past due amount of child support.

60. Once served on September 16, 2023, DE ALMEIDA contacted TULISANO and they decided together that Plaintiff must continue to be deprived both of his right to interstate travel and also have his freedom threatened.

61. On September 18, 2023, TULISANO agreed to file a perjured return of service with the intent that Plaintiff not discover the perjured return of service until after a *capius mittimus* had been issued.

62. TULISANO in fact did not notify either Plaintiff or his attorney of the perjured affidavit at the time of his initial filing.

63. TULISANO then waited, but filed his perjured affidavit right after Plaintiff's attorney filed a Motion for Continuance in Magistrate Court, on September 29, 2023.

9

64. TULISANO then mailed a copy of his perjured affidavit on October 2, 2023, to Plaintiff's attorney.

65. Plaintiff's attorney then filed a Motion to Dismiss, which was not addressed by Magistrate Court as of the date of this writing.

66. As a direct and proximate result of the violation of his constitutional rights by Defendants, Plaintiff suffered general and special damages as alleged in this Complaint. In addition to the elevation of Plaintiff's blood pressure, Plaintiff has been fearful of having his license revoked or other action taken by TULISANO in violation of his rights. Plaintiff has incurred increased expense in litigating a Motion to Dismiss and addressing the potential of a capias.

67. The conduct of Defendants was willful, malicious, oppressive and/or reckless, and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

## VI. THIRD CAUSE OF ACTION (42 U.S.C. §1983 – Fourteenth Amendment – Procedural Due Process – Conspiracy) All Defendants

68. Plaintiff repeats and realleges each and every statement of fact contained in the paragraphs previously set forth.

69. DE ALMEIDA and TULISANO agreed to deprive Plaintiff of notice and the opportunity to be heard by having TULISANO complete a perjured affidavit of service.

70. Hearings will be held as a result, regardless of whether they are to fight for dismissal or address the potential of a *capius mittimus* being issued, and any necessary appeals as a result of decisions made based on them.

10

71. As a direct and proximate result of the violation of his constitutional rights by Defendants, Plaintiff suffered general and special damages as alleged in this Complaint. In addition to the elevation of Plaintiff's blood pressure, Plaintiff has been fearful of having his license revoked or other action taken by TULISANO in violation of his rights. Plaintiff has incurred increased expense in litigating a Motion to Dismiss and addressing the potential of a capias.

72. The conduct of Defendants was willful, malicious, oppressive and/or reckless, and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

## VII. FOURTH CAUSE OF ACTION (42 U.S.C. §1983 – Equal Protection – Class of One) TULISANO

73. Plaintiff repeats and realleges each and every statement of fact contained in the paragraphs previously set forth.

74. TULISANO was aware that Plaintiff had no current obligation to provide child support after August 22, 2023.

75. TULISANO was aware that unallocated child support and alimony necessarily includes an amount attributable to child support.

76. TULISANO looked at the case file and saw that Plaintiff had paid over $430,000 to DE ALMEIDA over a 13-year period.

77. TULISANO was informed by Plaintiff in writing that there was no past due on child support, based on Connecticut guidelines.

78. TULISANO is trained for, and has a duty to, assist obligors in filing a Motion to Modify if the circumstances warrant.

11

79. TULISANO admitted to Plaintiff that he had never seen a case where child support was for a lifetime.

80. TULISANO's treatment of Plaintiff is unique.

81. TULISANO signed a perjured affidavit of service as a result of animus toward the Plaintiff.

82. TULISANO improperly signed an affidavit of service as a direct result of DE ALMEIDA informing him that the clock was ticking on pursuing alimony as child support.

83. As a result of TULISANO's actions, Plaintiff has suffered general and specific damages related to the expense of fighting against the unconstitutional actions both financially and emotionally.  Furthermore, the behavior was egregious and should therefore result in punitive damages being awarded.

## VIII. FIFTH CAUSE OF ACTION (Common Law Defamation) DE ALMEIDA Only

84. Plaintiff repeats and realleges each and every statement of fact contained in the paragraphs previously set forth.

85. DE ALMEIDA is aware that an accusation of not paying child support is damaging to an obligor's reputation.

86. DE ALMEIDA reported to TULISANO that Plaintiff owed over $200k in child support and that the obligation was for Plaintiff's lifetime.

87. DE ALMEIDA contacted TULISANO with the affirmation that Plaintiff did not pay any child support.

88. DE ALMEIDA has written numerous writings into the public forum insisting that she is deprived of child support by Plaintiff.

12

89. Plaintiff's credit report and public status with the U.S. Department of State is that
    of a delinquent child support obligor.

90. DE ALMEIDA knows that the accusation that Plaintiff did not or does not pay
    child support is false.

91. As a result of DE ALMEIDA's false claims, TULISANO first engaged in an effort
    to go after Plaintiff for lifetime child support and an arrearage that does not exist.

92. Plaintiff claims compensatory and exemplary damages.

93. DE ALMEIDA's conduct was extreme and outrageous.

94. Plaintiff claims punitive damages as the conduct was willful, wanton and
    malicious.

## IX. SIXTH CAUSE OF ACTION (Common Law Intentional Infliction of Emotional Distress) All Defendants

95. Plaintiff repeats and realleges each and every statement of fact contained in the
    paragraphs previously set forth.

96. Both defendants intended for a contempt citation to result in Plaintiff experiencing
    emotional distress, TULISANO to gain retribution for Plaintiff threatening to sue
    TULISANO and DE ALMEIDA in hopes that Plaintiff would then provide money
    not otherwise due to her.

97. Both TULISANO and DE ALMEIDA were aware that the threat of incarceration
    would likely result in emotional distress for Plaintiff.

98. Both defendants were aware that their conduct was extreme and outrageous, in
    that threatening someone for personal reasons or to extort monies not otherwise
    due is extreme and outrageous, especially the threat of incarceration.

13

99. But for both defendants acting in concert to try and place Plaintiff under threat of
incarceration through defamation and falsifying an affidavit, Plaintiff would not be
experiencing extreme distress.

100.    Plaintiff currently has two family members who need full-time medical and
supervisory care, including Plaintiff's one-year-old child with his present wife.
Both defendants were made aware of the situation, and as a result of their
activities, Plaintiff has experienced anxiety, depression and a large increase in
blood pressure.

101.    Plaintiff has become fearful for his safety at his home.

102.    Plaintiff has become fearful of not being able to drive his wife or son to
relevant medical appointments.

103.    Plaintiff claims compensatory and exemplary damages.

104.    Plaintiff has lost work opportunities and has been depressed, demoralized
and made anxious defendants' actions.

105.    Defendants' conduct was extreme and outrageous.

106.    Plaintiff claims punitive damages as the conduct was willful, wanton and
malicious.

## X. SEVENTH CAUSE OF ACTION (Common Law Abuse of Process) All Defendants

107.    Plaintiff repeats and realleges each and every statement of fact contained
in the paragraphs previously set forth.

108.    Both defendants know and understand that Connecticut Child Support
Enforcement Services are intended for child support enforcement.

14

109.    Both defendants are aware that Plaintiff does not owe lifetime child
support and that Plaintiff has given DE ALMEIDA over $430k under the
unallocated agreed order.

110.    Both defendants are attempting to use the contempt citation process of
Magistrate Court in order to extort money from Plaintiff under the guise of child
support what is not child support at all but alimony.  This is an improper use of a
mechanism reserved under strict statutory guidelines for the benefit of children.

111.    Plaintiff claims compensatory and exemplary damages.

112.    Plaintiff has lost work opportunities and has been depressed, demoralized
and made anxious defendants' actions.

113.    Defendants' conduct was extreme and outrageous.

114.    Plaintiff claims punitive damages as the conduct was willful, wanton and
malicious.

## XI. REQUEST FOR RELIEF

WHEREFORE, the plaintiffs respectfully request relief as follows:

115.    Nominal damages for each violation of Plaintiff's Constitutional rights by
the defendants.

116.    Compensatory damages in an amount to be proved at trial.

117.    Punitive damages against defendants in an amount to be proved at trial.

118.    Costs, including reasonable attorneys' and experts' fees actually incurred,
under 42 U.S.C. §1988, and under other applicable law.

119.    Any other relief that this Court deems just and equitable.

15

## XII. JURY DEMAND

Plaintiffs demand a jury trial.

**PLAINTIFF**
**JAMES KENNEDY**

Dated: October 16, 2023

_/s/ James Kennedy_____
**Plaintiff's Electronic Signature**

James Kennedy
96 Timberwood Road
West Hartford, CT 06117

james@kennedyideaworks.com

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above action, that he/she has read the above complaint and that the information contained in the complaint is true and correct.  28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at _West Hartford, CT_ on _10/16/23_.
             (location)                     (date)

_____
**Plaintiff's Original Signature**